*In re* MARRIAGE OF ˙BONITA LOUISE RICHMOND, n/k/a Bonita Bantner, Petitioner and Counterrespondent-Appellant, and DAVID KENT RICHMOND, Respondent and Counterpetitioner-Appellee.

Fourth District No. 4—87—0874

Opinion filed July 7, 1988.

Thomas R. Appleton, of Morse, Giganti & Appleton, of Springfield, for appellant.

Edward W. Huntley, of Holley, Keith & Huntley, and John S. Narmont, both of Springfield, for appellee.

JUSTICE LUND delivered the opinion of the court:

Petitioner Bonita Richmond appeals from the December 4, 1987, order of the circuit court of Sangamon County which modified the custody of David Richmond, minor child of petitioner and her ex-husband, respondent David Kent Richmond.

More than two years had expired between the prior custody order in this cause and the motion to modify filed by respondent. Section 610(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1985, ch. 40, par. 610(b)) provides in relevant part:

"[T]he court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts

that have arisen since the prior judgment *** that a change has occurred in the circumstances of the child or his custodian, *** and that the modification is necessary to serve the best interest of the child. *** The court shall state in its decision specific findings of fact in support of its modification or termination of joint custody if either parent opposes the modification or termination."

■ Custody decisions rest within the sound discretion of the trial court, and "[o]nce the court concludes that a change in custody is necessary, great deference must be accorded that decision, since the trial court is in the best position to judge the credibility of the witnesses and determine the needs of the child. *** [T]he question for the reviewing court is whether the trial court's decision is contrary to the manifest weight of the evidence." *In re Custody of Sussenbach* (1985), 108 Ill. 2d 489, 499, 485 N.E.2d 367, 371.

The trial court in its December 4, 1987, order made the following finding of facts in support of its modification of custody:

"With respect to the change of circumstances since the prior Custody Orders, the Court determines that there was a voluntary delivery of physical custody of both children to DAVID KENT RICHMOND followed by a later return of physical custody to BONITA BANTNER of JAY RICHMOND with a retention of physical custody of DAVID RICHMOND with DAVID KENT RICHMOND.

The Court finds that substantial and difficult circumstances and a negative impact upon the physical and emotional health of the minor children created said initial transfer of physical custody to the father, DAVID KENT RICHMOND; that the continued and following relationship of JAY RICHMOND and DAVID RICHMOND with both parents has had certain behavioral and emotional problems arising out of said earlier physical custody changes; that the Court finds that in order to provide for the mental and emotional development of both children and to foster a continuing relationship between both parents and both children that the Order for Joint Custody is appropriate and is necessary and is in the best interests of said children with residential custody to be vested as is set forth above."

Residential custody of David was placed with the respondent.

A careful examination of the record indicates the following facts. The marriage of petitioner and respondent was dissolved on October 19, 1979, with petitioner receiving custody of Jay, then five years old, and David, then two years old. Respondent received liberal visitation

rights, including, but not limited to, alternate weekends, holidays, and summer vacation.

Petitioner married James Bantner on April 26, 1983. In August 1984, petitioner, along with the boys and Bantner, moved to Texas, where Bantner had obtained employment. Bantner began a course of conduct which regularly included yelling and screaming. The boys were verbally abused at meals, and restricted in having friends visit. They avoided abuse by staying in their room. David had a bed-wetting problem, resulting in Bantner beating him with a belt.

In August 1985, petitioner, determining the conditions less than tolerable, sent the boys to her mother in Auburn, Illinois. Her mother asked respondent to take the boys. Respondent had remarried in 1981, and he and his wife willingly provided a home for both boys. The boys started school in Auburn and were close to their father. Upon returning to Auburn, David wet the bed for approximately six weeks and, during that time, had violent nightmares. Respondent and his wife treated these problems calmly and with affection. The bed-wetting and nightmares disappeared.

At Thanksgiving time in 1985, petitioner came to Auburn and requested the return of the boys. It was understood that any return would be at the Christmas break. After Christmas, Jay returned to Texas, but David elected not to return. Petitioner requested David's return in January 1986, but was refused. The living conditions created by Bantner's abusive conduct created a change in the circumstances from the facts that existed at the time of the original judgment. Considering the evidence, it is difficult to understand why petitioner would have, in January 1986, returned either boy to the Texas home occupied by Bantner. On June 3, 1986, respondent filed a petition to modify child custody asking that custody of David be awarded to respondent.

Petitioner returned from Texas in November 1986, and, subsequently, had the Bantner marriage dissolved. Her association with Bantner has not existed since her return. She lives with Jay three blocks from respondent's home.

All evidence indicates a close, loving relationship in respondent's home. David has adjusted well, is a good student, and is in athletic activities. He has continued to express a strong desire to live with his father. He checks in at his father's place of employment upon going to school and after school. The relationship with his stepmother is excellent.

Fighting and bickering between David and Jay does exist, but this is not too unexpected among brothers. Jay is now in high school, but

had difficulties with his grades during his eighth-grade year. Petitioner, who is regularly employed, also works extra hours at her mother's sewing shop. Both parents, stepmother, and grandmother attend functions involving the boys, and all show a sincere interest in both boys.

It is apparent that David's continued living under the stress created by James Bantner was against David's best interests. Both the bed-wetting and bad dreams soon disappeared after living in a decent environment. Petitioner, evidently, recognized this when sending both boys to Auburn. She soon learned of their placement with respondent. Her own testimony indicated the intolerable condition in Texas. Her attempt to return David to Texas at Christmastime could well have rekindled the problems with Bantner and could have resulted in permanent damage to the boy. Because of the parties' knowledge of the abuse in Texas, we find it difficult to fault respondent's refusal to return David to that situation.

David grew and developed in the healthy environment of his father's home. A healthy custodial relationship was created. Educational reports were positive, while those of his brother, who had returned to Texas for a time, were negative. We recognize the policy favoring the finality of child custody judgments. (See *In re Marriage of Wechselberger* (1983), 115 Ill. App. 3d 779, 786, 450 N.E.2d 1385, 1389.) In the present case, considering that David has been with respondent since August 1985, it would appear that the policy might weigh in favor of continued residential custody with respondent rather than with petitioner. In so observing, we emphasize that the continued placement with respondent was not based on respondent's wrongdoing.

The court's statement of facts in support of the modification is adequate, and the record clearly justifies the modification. To tempt fate by now changing custody from respondent, a custody that has appeared to have substantially benefited David, would appear to be against his best interests. The trial court's decision was not against the manifest weight of the evidence.

For the above reasons, the decision of the circuit court of Sangamon County is affirmed.

Affirmed.

GREEN, P.J., and KNECHT, J., concur.